IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL H. GELORME,<br>    Plaintiff,<br><br>    v<br><br>FERRACCIO FAMILY MARKETS OF<br>PENNSYLVANIA, INC.,<br>    Defendant. | )<br>)<br>)<br>)<br>) 2:12-cv-1340<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 25), with brief in support, filed by Ferraccio Family Markets of Pennsylvania, Inc. ("FFM"). Plaintiff Paul H. Gelorme ("Gelorme") filed a brief in opposition to the motion. The parties have developed their respective positions regarding the Concise Statement of Material Facts ("CSMF") and have submitted numerous exhibits. The motion is ripe for disposition.

Factual and Procedural Background

This is an employment discrimination case. Gelorme was employed by FFM for approximately six weeks. He was hired as FFM's Controller on October 13, 2011. On November 28, 2011 (the Monday after Thanksgiving) Gelorme either quit or was fired. Gelorme asserts claims under Title VII and the PHRA for an alleged male-on-male sexually hostile work environment and retaliation. At this stage of the case, all disputed facts and inferences must be viewed in the light most favorable to Gelorme.

On his first day of work, October 18, 2011, Gelorme attended a meeting at which he observed Joe Ferraccio, the owner of FFM, tickle and engage in physical horseplay with Nick Sinischalchi, the Director of Operations of FFM. Later that day, Ferraccio summoned Gelorme

to his office to "give him a hand with something." When Gelorme arrived, Ferroccio allegedly walked over to the bathroom, got a big smile on his face, grabbed his crotch and started to simulate masturbation. Gelorme contends that although Ferraccio did not verbally request a sexual favor, that request was implicit. Gelorme told Ferraccio that he was disgusting and left the office. During meetings the following week, Gelorme observed Ferraccio allegedly staring at his crotch, and expressed disfavor by covering his crotch with his billfold. Gelorme never confronted Ferraccio about the alleged staring. Following these incidents, Gelorme attempted to stay out of Ferraccio's office and tried to speak with him by phone rather than in person.

Ferraccio often brought his dog, a German Shepherd named Thunder, to the office. Gelorme contends that Ferraccio issued an implied threat by stating that the dog had previously bitten an employee and was trained to attack on command. FFM contends that Gelorme was friendly with and petted Thunder. Gelorme has not attempted to establish a direct causal link between the dog and alleged harassment.

After the first few days of his employment, there is no evidence of record of any further incidents of alleged sexual harassment. Gelorme admits that Ferraccio never directed any sexual comments to him. Gelorme never communicated any complaints of alleged sexual harassment to his co-workers. FFM considered Gelorme to be a below average employee.

On November 25, 2011 (the Friday after Thanksgiving), a significant work problem arose. Gelorme was at work that day. At approximately 11:00 a.m., Jennifer Holmes emailed a Save-a-Lot billing report to Gelorme and Ferraccio, in which the bills appeared to be twice as high as was proper. A flurry of emails and discussions ensued amongst Holmes, Gelorme and Ferraccio. At 11:43 a.m., Ferraccio emailed to instruct Gelorme to call him. At 1:06 p.m., Gelorme emailed Ferraccio to provide specific details of the issues with the Save-a-Lot bills.

2

From about 1:30-2:30 p.m., Gelorme left the office and went to the gym. At approximately 1:40 p.m., Ferraccio again emailed Gelorme to ask Gelorme to call him to discuss the billing issue. At approximately 2:30 p.m., Holmes emailed Ferraccio and Gelorme ten reports regarding the Save-a-Lot bills. According to Gelorme, around this time he did speak to Ferraccio by phone. Ferraccio was angry and screaming about the billing issue and wanted to know why Gelorme was not at the office. Gelorme left the office at 2:45 p.m. and did not return. At approximately 3:00 p.m., Ferraccio emailed Gelorme to ask another question regarding the Save-a-Lot bills. At 3:10 p.m., Gelorme responded by email. At 3:17 p.m., Ferraccio instructed Gelorme to call Save-a-Lot to attempt to resolve the billing issue. At 4:03 p.m., Ferraccio asked Gelorme to call him. Gelorme did not call him back. At 4:06 p.m., Ferraccio emailed Gelorme to ask why he was not in the office. Gelorme did not respond to the email, not did he speak to Ferraccio over the weekend. On Saturday, November 26, Ferraccio emailed Siniscalchi and stated that he assumed that Gelorme must have quit because Gelorme did not respond to his phone calls or emails.

The parties sharply dispute the events of Monday, November 28th. Gelorme had been unable to access FFM's online bank accounts and Ferraccio had removed the company checks from Gelorme's office. Gelorme contends that Ferraccio came into his office, with Thunder, and told him that he was terminated because of the incident on Friday. During a heated confrontation, Gelorme accused Ferraccio of lying about having talked to Holmes on Friday. Ferraccio got Holmes on the phone, who confirmed his veracity. Shortly thereafter, with Connie Skalski and Tammy Amendola as witnesses, Gelorme claimed to have been fired. Ferraccio assured Gelorme on multiple occasions that Gelorme had not been fired and that he could stay as an FFM employee. Gelorme admits that these assurances were made, but believed that they

3

were not sincere. Gelorme then briefly showed Connie and Tammie how to do some of the tasks on his computer and left FFM. Gelorme explained that if he had stayed, he would have been "terrorized" by Ferraccio's screaming and belligerent behavior.

Standard of Review

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant must identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To withstand summary judgment, the non-movant must show a genuine dispute of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). A dispute is "genuine" only if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Legal Analysis

Defendant seeks summary judgment on all claims and dismissal of this case in its entirety. FFM has itemized a list of reasons why Gelorme has allegedly failed to support cognizable claims for a hostile work environment or retaliation, including: (1) the lack of severe and pervasive conduct; (2) the lack of male-male sexual activity; (3) failure to comply with FFM

4

reporting procedures; (4) the lack of an adverse employment action; and (5) the lack of a causal link between any protected activity and the claimed loss of his employment. In recognition that the Title VII and PHRA claims are governed by the same legal standards, the parties have addressed them together.

A. Hostile Work Environment

To succeed on a hostile work environment claim, Gelorme must establish that: 1) he suffered intentional discrimination because of his gender, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). To determine whether an environment is hostile, a court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 168.

The Court concludes that Gelorme cannot succeed on a hostile work environment claim. No reasonable jury could find that the events complained of by Gelorme rose to the level of "severe and pervasive" conduct. Hostile work environment claims are not intended to be utilized as a tool for implementation of a general civility code or to attack "the ordinary tribulations of the workplace." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). While the alleged incident in Ferraccio's office might have supported a viable claim had such conduct been part of a pattern, the record reflects that it was a solitary occurrence on Gelorme's first day on the job. Gelorme responded that the conduct was "disgusting" and walked away and the conduct was

never repeated. Gelorme was not physically or verbally threatened and the incident did not unreasonably interfere with his work performance. Similarly, the occasions of alleged staring at his crotch do not meet the standard for either severity or pervasiveness. Gelorme did not quit his job immediately after these incidents. There are no allegations of alleged sexually hostile conduct after Gelorme's first week of work.[1] Although the Complaint vaguely alleged other incidents, no supporting evidence of improper conduct has been submitted into the record. In sum, Gelorme has failed to create a triable issue of fact as to whether there was severe and pervasive harassment based on his gender. *Compare, e.g., Saidu–Kamara v. Parkway Corp.*, 155 F.Supp.2d 436, 440 (E.D. Pa. 2001) (supervisor touching plaintiff's breasts and buttocks without consent and removing a bottle of wine from his pants and offering plaintiff a drink not pervasive and severe enough to create hostile work environment).

Gelorme cannot make out a prima facie case for a hostile work environment claim. Therefore, the Court need not explore the novel aspects of the alleged male-male discrimination theory that are presented by the facts and circumstances in this case.[2] Summary judgment will be granted in favor of FFM on the hostile work environment claim.

B. Retaliation

Gelorme may establish a prima facie case of retaliation by showing that: (1) he engaged in a protected activity; (2) the employer subjected him to an adverse employment action after or contemporaneously with his protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action. *Moore v. City of Phila.*, 461

---

[1] The Court cannot discern any sexual component to the allegations regarding Ferraccio's dog and, to mix animal metaphors, that issue is a red herring.
[2] For example, Gelorme concedes that the alleged harasser is not homosexual and FFM asserts, as a defense to a gender-based claim, that Ferraccio also allegedly sexually harassed a female employee.

F.3d 331 (3d Cir. 2006). Gelorme must prove traditional "but-for" causation. *University of Texas Southwestern Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013).

A plaintiff can satisfy the requisite causal link in at least two ways by demonstrating (1) that the temporal proximity between the protected activity and the adverse action that is "so close as to be unduly suggestive" of causation, *Williams v. Phila. Housing Auth.*, 380 F.3d 751, 760; or, in the absence of temporal proximity, (2) "timing plus other evidence," *id.*, for example, that the employer "engaged in a pattern of antagonism in the intervening period." *Flaig*, 2012 WL 5288716 at *5. A time gap of two months is not unduly suggestive. *Id.*

In this case, the only alleged protected activity by Gelorme was his statement that the alleged "masturbation" incident was disgusting and his placement of a billfold over his crotch. Gelorme has not attempted to demonstrate a direct causal link between those actions (which occurred at the very beginning of his employment) and the alleged termination of his employment. Instead, Gelorme posits an attenuated theory, namely: (1) the alleged harassment caused him to avoid contact with Ferraccio; (2) Gelorme attempted to perform his duties by phone, email or outside the office; and (3) Ferraccio fired him for such avoidance activities. The Court is not persuaded. Gelorme never communicated to Ferraccio or his co-workers that he was seeking to avoid personal contact with Ferraccio due to alleged harassment, and there is no evidence that FFM's alleged adverse employment action was based on Gelorme's avoidance behaviors.

Moreover, the record reflects compelling evidence of an intervening event which negates Gelorme's causation theory – namely, the work-related disputes of November 25-28th. *See Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003). There is no dispute that a billing issue flared up on November 25th; that Ferraccio instructed Gelorme to perform certain

tasks; and that Gelorme failed to do so.³  Ferraccio was angry about Gelorme's job performance. The record reflects statements from FFM employees to the effect that Gelorme expected to be fired on the 28th – as a result of the billing issue.  In addition, Gelorme admittedly failed to return Ferraccio's phone calls, as directed, over the weekend.  On November 28th, regardless of whether Gelorme quit or was fired, he engaged in a heated confrontation with Ferraccio and essentially called him a liar.  There is absolutely no evidence that the termination/resignation was at all connected to an alleged sexually hostile work environment or Gelorme's alleged opposition thereto more than a month earlier.⁴  In sum, summary judgment will be granted in favor of FFM on the retaliation claim.

In accordance with the foregoing, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 25) will be **GRANTED** and the case will be marked closed.

An appropriate Order follows.

McVerry, J.

---

³ Contrary to Gelorme's "avoidance" causation theory, it appears that Gelorme was at the office on the 25th. Moreover, Gelorme did not avoid an in-person meeting, but instead, failed to return phone calls and emails.
⁴ The Court also notes, without deciding, that there is little evidence of a cognizable adverse employment action in this case, as it appears that Gelorme quit voluntarily.  Ferraccio, the owner of FFM, repeatedly assured Gelorme in front of witnesses that he had <u>not</u> been fired.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL H. GELORME,<br>　　　　　Plaintiff,<br><br>　　　v<br><br>FERRACCIO FAMILY MARKETS OF<br>PENNSYLVANIA, INC.,<br>　　　　　Defendant. | )<br>)<br>)<br>)　2:12-cv-1340<br>)<br>)<br>)<br>)<br>) |

## ORDER OF COURT

AND NOW, this 26th day of November, 2013, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 25) is **GRANTED**. The clerk shall docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc:　**Susan N. Williams, Esquire**
　　　Email: snwilliams2004@yahoo.com
　　　**Adam R. Gorzelsky, Esquire**
　　　Email: arg34net@aol.com

　　　**Dean F. Falavolito, Esquire**
　　　Email: dffalavolito@burnswhite.com